1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOEL WOODARD, individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>BOEING EMPLOYEES' CREDIT UNION and KAYE-SMITH ENTERPRISES INC., and DOES 1 through 100 inclusive,<br><br>     Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1441(A) AND 1453 BY DEFENDANT BOEING EMPLOYEES' CREDIT UNION**<br><br>[Removed from King County Superior Court, Case No. 22-2-17671-7SEA] |

  **TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

  **PLEASE TAKE NOTICE THAT:** Defendant Boeing Employees' Credit Union ("BECU") hereby removes *Noel Woodard v. Boeing Employees' Credit Union et al*, Case No. 22-2-17671-7SEA, from the King County Superior Court, to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1441(a) governing the removal of civil actions and § 1453 governing the removal of class actions. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(a), as well as federal question jurisdiction under 28 U.S.C. § 1331 and corresponding supplemental jurisdiction under 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders

served on BECU in the action to date are attached as Exhibit 1 to the Declaration of Christopher T. Wion ("Wion Decl."), and BECU provides the following "short and plain statement of the grounds for removal."[1]  Additionally, in accordance with Local Civil Rule 101(b), a copy of the operative complaint filed by Plaintiff Noel Woodard is being filed contemporaneously herewith and copies of all additional records and proceedings in the state court will be filed within 14 days.

## I.    INTRODUCTION

Plaintiff Noel Woodard brings this action alleging that on June 6, 2022, Kaye-Smith Enterprises, Inc. ("Kaye-Smith")—BECU's vendor—fell victim to a data breach, wherein an unauthorized actor gained access to the vendor's computer network containing personally identifiable information ("PII") and financial information.  (Compl. ¶ 49.)

This is not the first case Plaintiff has filed against BECU.  Just over five months ago, on August 4, 2022, she filed a very similar complaint in the Western District of Washington alleging that this Court had jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  *See Woodard v. Boeing Employees' Credit Union Financial Services Inc*., No. 2:22-cv-01093-RAJ (W.D. Wash.) [ECF No. 1, 8].  And shortly after BECU filed its motion to dismiss, perhaps realizing her claims lacked merit, Plaintiff voluntarily dismissed that action.  *Id.* at ECF No. 15.

Plaintiff Noel Woodard filed a putative class action on October 26, 2022 against BECU and Kaye-Smith in the King County Superior Court, alleging harm stemming from "cybercriminals infiltrate[ing] Defendants' . . . network servers and accessed . . . [her] PII and financial information." (Compl. ¶¶ 2, 7, 36, 38, 41, 49.)

---

[1] As the Supreme Court has held, § 1446(a) requires only that BECU plausibly allege the requirements for federal jurisdiction; BECU "need not [offer] evidentiary submissions" with the notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014).  "Evidence establishing [jurisdiction] is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 89; *accord Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924–25 (9th Cir. 2019) ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements. . . . [E]vidence showing [that the jurisdictional requirements are met] is required 'only when the plaintiff contests, or the court questions, the defendant's allegation.'"  (citations omitted)).

Against BECU and Kaye-Smith, Plaintiff alleges four claims: (1) negligence, (2) breach of implied contract, (3) violations of the Washington Consumer Protection Act ("WCPA"), RCW 19.86, *et seq*, and (4) unjust enrichment.

The purported class that Plaintiff seeks to represent is defined as:

> All individuals within the State of Washington whose PII and/or financial information was exposed to unauthorized third-parties as a result of the data breach referenced in BECU's letter to Plaintiff Woodard dated July 25, 2022 (Compl. 28.)

Among other remedies, Plaintiff, on behalf of herself and all other members of the Class, seeks an award of actual, nominal, and punitive damages, pre-judgment interest, and attorneys' fees and costs. (*See* Compl. Relief Sought ¶¶ 2, 6-7.)

The Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(a). In addition, federal question jurisdiction exists over Plaintiff's negligence claim under 28 U.S.C. § 1331 because it raises "significant federal issues." Finally, supplemental jurisdiction exists over Plaintiff's remaining claims under 28 U.S.C. § 1367 because those claims purportedly arise from "part of the same case or controversy" as the claims raising "significant federal issues." Accordingly, this action may be properly removed to this Court under 28 U.S.C. §§ 1441 and 1453 for multiple reasons.

## II.    REMOVAL IS PROPER UNDER CAFA

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also id*. § 1453(b).

CAFA vests district courts with original jurisdiction over putative class actions with 100 or more class members, where the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, and where "any member of [the] class of plaintiffs is a citizen of a State

1    different from any defendant." 28 U.S.C. § 1332(d)(1)–(2). This action satisfies each of CAFA's

2    requirements.

3         **Covered Class Action.**  This action meets CAFA's definition of a class action, which is

4    "any civil action" filed under a "State statute or rule of judicial procedure" that, "similar" to

5    Federal Rule of Civil Procedure 23, authorizes "an action to be brought by 1 or more representative

6    persons as a class action."  28 U.S.C. § 1332(d)(1)(B); *see* 28 U.S.C. § 1453(a).  Plaintiff alleges

7    that she "brings this action individually and on behalf of all persons similarly situated . . . under

8    Washington Civil Rule 23" (Compl. ¶¶ 28, 32)—which is Washington's analogue to Federal Rule

9    of Civil Procedure 23.  Accordingly, Plaintiff filed a "class action" within the meaning of CAFA.

10         **Class Action Consists of More Than 100 Members.**  Plaintiff seeks to represent a class

11    of "[a]ll individuals within the State of Washington whose PII and/or financial information was

12    exposed to unauthorized third-parties as a result of the data breach" (Compl. ¶ 28.), which

13    Plaintiff's complaint estimates to be in the "thousands."  (Compl. ¶ 32, a.)  Accordingly, by

14    Plaintiff's own admission, there are at least 100 persons in the putative class, as required by 28

15    U.S.C. § 1332(d)(5)(B).  *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th

16    Cir. 2013) ("[C]omplaint . . . seeking to 'provide remedies for hundreds of affected consumers'"

17    was sufficient to establish at least 100 class members.)

18         **The Parties Are Minimally Diverse.**  CAFA requires minimal diversity—which means

19    that at least one putative class member must be "a citizen of a State different from any defendant."

20    28 U.S.C. § 1332(d)(2)(A).  A class member is any person "who fall[s] within the definition" of

21    the proposed class.  *Id.* § 1332(d)(1)(D).  And corporations are deemed to be citizens of the states

22    where they are incorporated or organized, and where they have their principal places of business.

23    28 U.S.C. § 1332(c)(1), (d)(10).

24         BECU is a Washington Corporation with its principal place of business in Washington.

25    (Compl. ¶ 22.).  Kaye-Smith is an Oregon Corporation with its principal place of business in

26    Oregon.  *Id.* ¶ 23.  Plaintiff is a "resident and citizen" of Washington.  *Id.* ¶ 10.  CAFA's minimal

1   diversity requirements are therefore satisfied because diversity exists between at least one

2   defendant, Kaye-Smith, and Plaintiff. *See Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co*.,

3   844 F.3d 1133, 1137 (9th Cir. 2017) (explaining that, under CAFA, "one plaintiff [must be] a

4   citizen of a different state than *one* defendant") (emphasis added).

5        In addition, Plaintiff's class definition provides further confirmation that minimal diversity

6   exists in this action.  Although Plaintiff, an individual, is a citizen of Washington, she seeks to

7   represent a class of "[a]ll individuals *within* the State of Washington whose PII and/or financial

8   information was exposed to unauthorized third-parties as a result of the data breach" (Compl. ¶ 28

9   (emphasis added).)  As the Ninth Circuit has explained, "[t]hat a [person] may have a residential

10  address in [one state] does not mean that person is a citizen of [that state]." *King v. Great Am.

11  Chicken Corp, Inc.*, 903 F.3d 875, 879 (9th Cir. 2018) ("It cannot be assumed that all residents of

12  California are citizens of the United States.").  In *King*, the Ninth Circuit noted that at least one

13  other potential class member permanently moved to Arizona, and it "seems likely that at least some

14  others in the group would have moved out of California as well." *Id*.  Further, the court recognized

15  that potential class members may have been citizens of other states, even if they had temporary

16  residential addresses in California. *Id*.

17       It is more than plausible that Plaintiff's proposed class includes citizens of states other than

18  Washington.  For example, a person could be "within Washington" and be a member of BECU,

19  but is a non-Washington citizen, such as a college student. *See Mondragon v. Cap. One Auto Fin.*,

20  736 F.3d 880, 881 (9th Cir. 2013) ("We imagine that at least some purchasers who were California

21  citizens at the time of purchase subsequently moved to other states."); *Kanter v. Warner–Lambert

22  Co.*, 265 F.3d 853, 857 (9th Cir.2001) ("The natural person's state citizenship is then determined

23  by her state of domicile, not her state of residence.").  Furthermore, Plaintiff's class definition sets

24  no time period for when a potential member of the class must be "within Washington" to qualify

25  for membership.  The class therefore encompasses persons who signed up to become BECU

26  members years ago while Washington citizens, but who today are citizens of other states.

1   Accordingly, minimal diversity exists because Plaintiff is a citizen of a different state than

2   Defendant Kaye-Smith, and at least one putative class member is a citizen of a different state than

3   BECU's state of citizenship, Washington.  *See* 28 U.S.C. § 1332(d)(2)(A).

4   **The Amount In Controversy Exceeds $5 Million.**  Under CAFA, the claims of class

5   members are aggregated to determine if the amount in controversy exceeds the required "sum or

6   value of $5,000,000, exclusive of interests and costs."  28 U.S.C. § 1332(d)(2), (d)(6).  A

7   "defendant's notice of removal need include only a *plausible allegation* that the amount in

8   controversy exceeds the jurisdictional threshold" of $5 million.  *Dart Cherokee Basin Operating*

9   *Co.,* 574 U.S at 89 (emphasis added).

10  Under controlling law, the total amount put in controversy by the claims asserted on behalf

11  of the putative plaintiff class includes not only the value of the injunctive relief and attorneys' fees

12  discussed above, but also the monetary relief that Plaintiff seeks on behalf of the putative class.

13  *Peck v. Cingular Wireless LLC*, 2009 WL 775385, at *2 (W.D. Wash., Mar. 20, 2009).  And the

14  monetary relief sought on behalf of the putative class, standing alone, exceeds $5,000,000,

15  exclusive of costs and interest.

16  Although BECU denies all allegations of wrongdoing and states that Plaintiff's claims are

17  meritless, Plaintiff's complaint seeks, among other things, compensatory, and punitive damages,

18  attorneys' fees, and a laundry list of injunctive relief leaving no question that the amount in

19  controversy far exceeds $5 million.[2]

20  Plaintiff seeks to recover compensatory and consequential damages—some of which is

21  intended to compensate class members for purported harm that "may continue for years" (Compl.

22  ¶ 72.)  On behalf of that putative class, Plaintiff seeks to recover compensatory and consequential

23  damages for, among other things:

---

[2] *See generally Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial.  This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy.").

1    (i) the increased risk of fraud, identity theft, and misuse;

2    (ii) actual identity theft;

3    (iii) the loss of the opportunity of how their PII and financial information is used;

4    (iv) the compromise, publication, and/or theft of Plaintiff and the Class member's

5    PII and financial information;

6    (v) out-of-pocket expenses associated with the prevention, detection, and recovery

7    from identity theft, tax fraud, or unauthorized use of their PII and financial

8    information;

9    (vi) lost opportunity costs associated with effort expended and the loss of

10    productivity addressing and attempting to mitigate the actual and future

11    consequences of the data breach;

12    (vii) invasion of privacy;

13    (viii) loss of the confidentiality of the stolen confidential data;

14    (ix) deprivation of the value of Plaintiff and the Class' PII;

15    (x) financial and temporal cost of monitoring credit, financial accounts, and

16    mitigating damages; and

17    (xi) insufficient identity theft protection.

18    (Compl. ¶¶ 101, 112; Relief Sought ¶¶ 1-8.).

19    Plaintiff does not allege a total amount for these purported losses but seeks damages "on

20    behalf of each member of the proposed Class(es)[.]" (Compl. ¶ 11.) Assuming the average class

21    member demands just above $300 in damages, only 17,000 class members are required to meet

22    CAFA's $5 million threshold. Even this exceedingly conservative estimate makes clear that

23    CAFA's requirements are satisfied.

24    And perhaps more importantly, Plaintiff herself admitted to this Court in a prior action that

25    "the amount of controversy exceeds the sum or value of $5 million." *Woodard* Compl. ¶ 26. The

26    Ninth Circuit has held that allegations of fact in an amended or withdrawn pleading are "competent

1   evidence of the facts stated." *Huey v. Honeywell*, 82 F.3d 327, 333 (9th Cir.1995). Therefore,

2   "the Court may consider the allegations previously made by Plaintiff as controvertible evidence"

3   to determine the amount in controversy in CAFA cases. *Deaver v. BBVA Compass Consulting &*

4   *Benefits, Inc*., 2014 WL 21999645, at * 3-4 (N.D. Cal. May 27, 2014) (holding that defendants

5   may properly rely on allegations in a prior action to calculate the amount in controversy under

6   CAFA).

7       In sum, because the amount in controversy exceeds $5 million, and all the other factors for

8   CAFA jurisdiction are met, this case "belongs in federal court." *See Lewis v. Verizon Commc'ns,*

9   *Inc*., 627 F.3d 395, 399 (9th Cir. 2010) ("Once the proponent of federal jurisdiction has explained

10  plausibly how the stakes exceed $5,000,000, . . . the case belongs in federal court unless it is legally

11  impossible for the plaintiff to recover that much." (quotation marks and citation omitted)).

## III.   FEDERAL QUESTION JURISDICTION
## PROVIDES AN ADDITIONAL BASIS FOR REMOVAL

14      The Supreme Court has recognized that "in certain cases federal-question jurisdiction will

15  lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods.,*

16  *Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "The doctrine captures the commonsense

17  notion that a federal court ought to be able to hear claims recognized under state law that

18  nonetheless turn on substantial questions of federal law, and thus justify resort to the experience,

19  solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

20      Federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised,

21  (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

22  disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 258

23  (2013).

24      ***First***, Plaintiff's negligence claim raises "significant federal issues" because it expressly

25  raises violations of Section 5 of the FTC Act and therefore will require significant construction

26  and interpretation of a federal statute. (Compl. ¶¶ 99-100.)  For example, Plaintiff alleges that the

"FTC publications and orders . . . form part of the basis for Defendants' duty[.]"). *Id.* at ¶ 100. According to Plaintiff, BECU breached the duty imposed by Section 5 of the FTC Act by "failing to use reasonable [security] measures to protect [Plaintiff's and the Class members'] PII and financial information[.]" *Id.* Based on the foregoing allegations, Plaintiff's negligence claim will require the Court to analyze the FTC's interpretation of "reasonable security measures," and whether Defendant even owes a duty to Plaintiff under Section 5. Accordingly, because Plaintiff expressly alleges that Defendant should be liable to Plaintiff for purportedly violating Section 5 (*id.*), Plaintiff's negligence claim raises a "significant federal issue."

**Second**, the aforementioned federal issues are "actually disputed" because BECU denies all the claims asserted against it, including those that raise federal issues. *See Gunn*, 568 U.S. at 259 (holding that the federal issue was actually disputed where the defendants denied the plaintiff's allegations on the federal issue).

**Third**, the federal issues raised in Plaintiff's complaint are "substantial" in the sense that the issues are important to the "federal system as a whole." *Id*. at 260. Plaintiff's negligence claim turns on whether BECU violated the FTC Act. Cyber incidents impacting credit unions with nationwide membership, such as BECU, that resulted in disclosure of data protected under federal law, do not raise a state or local issue, but rather a federal one—which is further demonstrated in Plaintiff's allegations stating that BECU "violated 15 U.S.C. § 45 by failing to use reasonable [security] measures to protect [Plaintiff's and the Class members'] PII and financial information" (Compl. ¶ 100.) And as President Biden's "Executive Order on Improving the Nation's Cybersecurity" made clear, "remediation of cyber incidents is a top priority [of the federal government] and essential to national and economic security."[3] Therefore, cases such as this one demand the uniformity federal law would afford in determining what constitutes reasonable cybersecurity measures in the face of malicious, persistent threat actors, which sometimes are

---

[3] Executive Order on Improving the Nation's Cybersecurity (May 12, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/05/12/executive-order-on-improving-the-nations-cybersecurity/

1   backed by foreign nation states attempting to conduct cyber espionage or cyberwar on this nation.

2   The federal interest in enforcing cybersecurity measures in the context of ransomware attacks is

3   therefore unquestionably substantial.  *See Rosenman*, 2021 WL 3829549, at *6 ("Moreover,

4   resolution of the . . . questions presented in this case could affect other cases being brought by

5   consumers, advertisers, and federal agencies in federal court[.]").

6        ***Fourth***, the federal issues are capable of resolution in federal court without disrupting the

7   federal-state balance approved by Congress.  This requirement focuses "principally on the nature

8   of the claim, the traditional forum for such a claim, and the volume of cases that would be affected."

9   *New York ex rel.  Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016).

10  Asserting jurisdiction over this case will not tip the balance of federal-state judicial responsibilities.

11  Data breach class actions are routinely heard in federal court, and in fact, one other class action

12  arising from the same cyber incident against Kaye-Smith is proceeding before a Federal District

13  court in Oregon.  *See Smith v. Kaye-Smith*, No. 3:22-cv-01499 (D. Or.).  Moreover, state courts

14  are not the traditional forum for hearing the narrow set of data breach cases alleging negligence

15  claims that are predicated on the FTC Act—which does not provide for a private right of action.

16  *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 281 (9th Cir. 1973) (holding that Section 5 of the FTC

17  Act lacks a private right of action).

18       Accordingly, the Court has federal question jurisdiction over Plaintiff's negligence claim

19  because it necessarily turns on disputed and substantial questions of federal law important to the

20  federal system and because resolution of them in federal court would not disrupt the federal-state

21  balance.  *See In re: Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, 2016 WL 1192642, at

22  *4–6 (C.D. Cal. Mar. 28, 2016) (denying motion to remand because claims were federal in nature

23  and relief depended on the resolution of substantial questions of federal law); *California ex rel.*

24  *Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841–43 (9th Cir. 2004), *opinion amended on denial of*

25  *reh'g*, 387 F.3d 966 (9th Cir. 2004) (same); *Towne Auto Sales, LLC v. Tobsal Corp.*, 2017 WL

26  1738405, at *2 (N.D. Ohio May 4, 2017) ("[T]he Court determines that Counts Four [and] Five . . .

1  alleging Negligence [and] Negligence *per se* . . . are affirmatively founded upon violations of the
2  federal Bank Secrecy Act and the Patriot Act.  These Counts allege that the duty the Bank owed
3  to Plaintiff arises out of the obligations imposed by these federal laws . . . Therefore, the Court
4  finds that removal under federal question jurisdiction was appropriate.").[4]

5          Because the Court has federal question jurisdiction over Plaintiff's negligence claim, it has
6  supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's remaining state law causes of
7  action (*i.e.*, breach of implied contract, violation of the WCPA, and unjust enrichment) because
8  they arise from "the same case or controversy," namely the cyber incident impacting BECU's
9  vendor, Kaye-Smith.  (*Compare* Compl. ¶ 79 *with* ¶¶ 104, 113, 123); *Exxon Mobil Corp. v.*
10 *Allapattah Serv.*, 545 U.S. 546, 549 (2005).

11           **IV.    COMPLIANCE WITH OTHER REMOVAL REQUIREMENTS**

12         **Removal Is Timely.**  This Notice of Removal is timely because the BECU filed it within
13 30 days of being served with the summons and initial complaint on December 7, 2022.  *See* 28
14 U.S.C. § 1446(b)(1) (requiring, as relevant here, that a notice of removal of a civil action be filed
15 within 30 days after the defendant receives, "through service or otherwise," a copy of the summons
16 and complaint); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354
17 (1999).

18         **Venue Is Proper.**  Plaintiff filed this action in the King County Superior Court.  Therefore,
19 venue is proper in the United States District Court for the Western District of Washington, because

---

[4] *See also W. 14th St. Com. Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) ("In construing the [federal] Act in a state cause of action, the federal issue is decisive because upon that Act's construction the vindication of rights and definition of relationships *created by federal law* depends."); *Landers v. Morgan Asset Mgmt., Inc.*, 2009 WL 962689, at *11 (W.D. Tenn. Mar. 31, 2009) ("Plaintiffs' complaint does . . . raise disputed federal issues so substantial as to give rise to federal jurisdiction.  Plaintiffs are masters of their complaint, and their complaint raises disputed federal questions as part of their negligence claim . . . ."); *Grodi v. Mandalay Resort Grp., Inc.*, 2003 WL 22244048, at *3 (N.D. Miss. Aug. 4, 2003) ("[T]he court finds that federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  The Plaintiffs' negligence per se claim 'arises under' the laws of the United States . . . ."); *Citadel Secs. LLC v. Chi. Bd. Options Exch., Inc.*, 2017 WL 118419, at *5 (N.D. Ill. Jan. 12, 2017) (denying remand because "the court concludes that plaintiffs' claims, although couched in state law terms, arise under [a federal] Act and jurisdiction in federal court is proper").

NOTICE OF REMOVAL - 11
CASE NO.

1    it is the "district and division embracing the place where such action is pending." 28 U.S.C.

2    § 1441(a); *see also id.* § 128(b).

3        **Consent to Removal.**  This Notice of Removal satisfies the requirement of 28 U.S.C.

4    § 1446(b)(2)(A) that "all defendants who have been properly joined and served must join in or

5    consent to the removal of the action."  As of the time of this filing, BECU understands that the

6    only other named defendant, Kaye-Smith, has not been served.  Wion Decl., ¶ 4.

7        **Notice to Plaintiff and State Court.**  Promptly after the filing of this Notice, written notice

8    of the filing will be served on Plaintiff, and a copy of the Notice, including exhibits, will be filed

9    in the King County Superior Court, as required by 28 U.S.C. § 1446(d).

10

       DATED this 6th day of January, 2023.

11

12                         SUMMIT LAW GROUP, PLLC

13                By *s/ Christopher T. Wion*

14                   Christopher T. Wion, WSBA #33207
                  *ChrisW@summitlaw.com*

15                   315 Fifth Avenue S., Suite 1000
                  Seattle, WA 98104-2682

16                   Tel: 206-676-7000

17                   Marcus A Christian (*pro hac vice*
                  forthcoming)

18                   *MChristian@mayerbrown.com*
                  **Mayer Brown LLP**

19                   1999 K Street, N.W.
                  Washington, D.C. 20006-1101

20                   Tel:  202.263.3000

21                   *Attorneys for Defendant Boeing Employees'*
                  *Credit Union*

22

23

24

25

26

NOTICE OF REMOVAL - 12
CASE NO.

1

**CERTIFICATE OF SERVICE**

2

   I hereby certify that on this day I caused the foregoing to be served, via email, upon the

3

following:

4

                              *Attorneys for Plaintiff*

5

                              Mark J. Hilliard, WSBA #47138
                              BROTHERS SMITH LLP

6

                              2033 N. Main St., Ste. 720
                              Walnut Creek, CA  94596

7

                              Email:   mhilliard@brotherssmithlaw.com

8

                              Scott Edward Cole, *pro hac vice*

9

                              Laura Van Note, *pro hac vice*
                              Cody Alexander Bolce, *pro hac vice*

10

                              COLE & VAN NOTE
                              555 12th Street, Ste. 1725

11

                              Oakland, CA  94607
                              Email:   sec@colevannote.com

12

                                       lvn@colevannote.com

13

                                       cab@colevannote.com

14

   DATED this 6th day of January, 2023.

15

16

                                       *s/Sharon K. Hendricks*
                                       Sharon K. Hendricks, Legal Assistant

17

                                       sharonh@summitlaw.com

18

19

20

21

22

23

24

25

26

NOTICE OF REMOVAL - 13
CASE NO.